(143 App. Div. 241.)

NATIONAL SURETY CO. v. EMPIRE STATE SURETY CO.

(Supreme Court, Appellate Division, First Department. March 10, 1911.)

1. PRINCIPAL AND AGENT (§ 71*)—RETENTION OF FUNDS—FRAUD.
   Retention in good faith by an agent of funds to cover disputed commissions does not constitute fraud or dishonesty, though erroneous.
   [Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 71.*]

2. PRINCIPAL AND AGENT (§ 79*)—AGENCY BONDS—BREACH—QUESTION FOR JURY.
   Whether an agent's retention of funds to cover a disputed commission was fraudulent or dishonest held, under the evidence, a jury question in an action on the agent's bond.
   [Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 79.*]

Appeal from Trial Term, New York County.

Action by the National Surety Company against the Empire State Surety Company. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and MILLER, JJ.

Charles Haldane, for appellant.

William J. Griffin, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J.   The defendant appeals from a judgment entered upon the direction of a verdict.   The action is upon a surety company bond given to indemnify the plaintiff, also a surety company, against the "fraud and dishonesty" of an employé.   Plaintiff appointed a corporation known as Lecky & Rubin, Incorporated, its agent to procure applications for insurance in the state of Virginia, and to collect the premiums thereon.   The agent agreed to hold all premiums received by it as a fiduciary trust, awaiting remittance to the principal.   It was to pay the expenses of conducting the agency, and was to be compensated by a percentage of cash premiums collected.   The agent further agreed to keep proper books, and, not later than the 10th of each month, to forward to the home office of the principal an accurate detailed report of all premiums collected or received, and not previously remitted, accompanied with draft or post office order for the net amount due the company.   In conformity with this provision it was the course of business for the agents to retain their earned commissions, remitting only the net balance of premiums collected.   The agreement provided that the agent should furnish a bond "conditioned for the due accounting and paying over to" the principal of all moneys which might become due to the principal.   The bond which was furnished and accepted, and upon which plaintiff now sues, was not in this form, and imposed a much narrower liability upon the surety. It undertook to make good and reimburse plaintiff for such loss, not exceeding a specified sum, as plaintiff might sustain "by reason of the fraud and dishonesty of the employé in connection with the duties pertaining to the office or position to which the employé has been appointed."   Another clause of the bond provided that the company should not be liable for a loss occasioned by a "breach of contract" by the employé.

The circumstances under which this claim upon defendant has arisen relate to a commission claimed by the agent to be due to it upon certain bonds alleged to have been written, upon the agents' procurement, for the contractors for the Ashokan Dam in the state of New York. Whether or not the agent had any substantial claim to such commissions does not clearly appear, because practically all the evidence relating to it was excluded.   From what does appear, however, read in conjunction with what is suggested by the questions which were not permitted to be answered, it may be inferred that the question of the agents' right to the commission was at least debatable.   On June 10, 1908, the agent wrote the plaintiff that it was preparing its regular monthly statement, and would like to know what amount to take credit for on the Ashokan Dam contract.   To this plaintiff replied, saying that it was not a party to the bond, and therefore the agent was not entitled to the commission.   The evidence on the trial seems to contradict this statement as to plaintiff's participation in the bond. On June 24, 1908, the agent transmitted its monthly statement, showing the collections made by it, and deducting commissions, including $1,396.90 for its commission on the Ashokan Dam contract.   Plaintiff refused to acquiesce in this deduction, and demanded that the sum be remitted, which, however, was not done.   The matter continued to

be the subject of some correspondence, and finally, on September 3, 1908, plaintiff terminated the agency contract and sent an accountant to settle up the business. He proceeded to Virginia and settled up the accounts, receiving every assistance from the officers of the agent, and finally all matters between plaintiff and its agent were satisfactorily settled and adjusted, except the matter of the agents' claim for commissions on the Ashokan Dam contract, which amount the agent insisted upon retaining and the plaintiff insisted upon receiving. It is for this amount that the present suit is brought.

It is to be observed that defendants' liability is limited to losses sustained by plaintiff by reason of the fraud and dishonesty of the agent. In directing a verdict the trial court, in effect, held as matter of law that the retention of the disputed commissions constituted fraud or dishonesty. Upon the present record we cannot concur with that view. There was no attempt to mislead the plaintiff or to conceal anything. The commission was openly deducted, and defendants' attention promptly and pointedly called to the deduction. On the face of the evidence we can see no indication of the sinister elements which usually go to make up fraud and dishonesty. There appears to have been an honest difference of opinion. Of course, it is possible for an agent to attempt to cover up a case of fraud by a simulation of frankness. The evidence does not show or suggest that this is such a case; but, if it were, the question would be a proper one for the jury. If the agent in good faith, although erroneously, believed that it was entitled to retain the disputed commissions, it would not constitute fraud or dishonesty to do so. At the most, therefore, the question whether or not the agents' acts amounted to fraud or dishonesty was one for the jury, under proper instructions as to the meaning of those terms.

Other grounds of appeal, argued upon the briefs, need not be discussed, as what has already been said calls for a reversal of the judgment.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur